**UNITED STATE DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **KENNETH TUGGLE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.:** |
| ) | |
| **SARASOTA COUNTY** ) | |
| **GOVERNMENT,** ) | |
| **a/k/a SARASOTA COUNTY FIRE** ) | |
| **DEPARTMENT,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## COMPLAINT

Plaintiff, KENNETH TUGGLE. (hereinafter "Plaintiff" and/or "Mr. Tuggle"), sues Defendant, SARASOTA COUNTY GOVERNMENT, a/k/a SARASOTA COUNTY FIRE DEPARTMENT (hereinafter "Defendant" and/or "SCFD"), and alleges:

## Jurisdiction

1. This civil action raises a federal question arising under the laws of the United States, namely the Americans with Disabilities Act, as amended (ADA), 42 U.S.C. §12101 *et seq.*

Page **1** of **18**

2. This Court has original jurisdiction of this civil action under 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's following state law claims under the Florida Civil Rights Act of 1992 ("FCRA"), Chapter 760, *Florida Statutes*; because the claims are so related to the federal claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

## Venue

4. Plaintiff was a resident of Sarasota County, Florida at the time of his termination and now resides in Sarasota County, Florida.

5. Plaintiff was employed by Defendant to perform his employment in Sarasota County, Florida.

6. Defendant does business in Sarasota County, Florida.

7. Defendant has agents, employees and supervisors conducting business in Sarasota County, Florida, for the benefit of Defendant.

8. Defendant is and was subject to personal jurisdiction in Sarasota County, Florida at the time this action commenced.

9. A substantial part, if not all, of the events or omissions giving rise to this claim and cause of action occurred in Sarasota County, Florida.

10. Venue lies in this Court and this District pursuant to 28 U.S.C. § 1391.

## Division

11. Sarasota County, Florida is in the Tampa Division of this Middle District.

12. The Tampa Division of this Middle District has the greatest nexus with this cause of action as the claim in this civil action arose in Sarasota County, Florida, the Plaintiff resides in and was employed by Defendant in Sarasota County, Florida and the Defendant is deemed to reside in Sarasota County, Florida.

13. This Tampa Division is the proper division for this civil action pursuant to Local Rule 1.02(c).

## General Factual Allegations

14. Plaintiff was a Firefighter/EMT with SCFD and began his employment on April 7, 2003 with approximately 22 years of dedicated loyal service in Sarasota County prior to his termination on June 20, 2025.

15.   Plaintiff sustained two separate on-the-job work-related injuries to his left and right shoulders, both accepted and treated under Workers' Compensation, subject to their known delays and scheduling.[1]

16.   He injured his left shoulder on or about November 16, 2022.

17.   He subsequently injured his right shoulder in the later part of 2023.

18.   Shortly thereafter, SCFD placed Mr. Tuggle on light duty.

19.   Workers' Compensation required him to do a minimum of three months before they would allow the surgeons to operate on his right shoulder.

20.   They operated on his right shoulder (arthroscopic rotator cuff repair) on or about March 28, 2024, to be followed by the completion of physical therapy.

21.   Once physical therapy on the right shoulder is completed, they would schedule surgery on his left shoulder.[2]

22.   In the later part of 2024, they requested surgery for his left shoulder.

---

1 Note that since his treatment was through Workers' Compensation, the employer, SCFD, was fully aware of all of his medical treatment.
2 It is common knowledge that orthopedic surgeons do not operate on two shoulders at the same time, rather, they alternate the surgeries.

23. It took approximately three months for Workers' Compensation to approve the surgery.

24. On February 5, 2025, Defendant notified Plaintiff that they were eliminating his light duty and to return to full duty with no restrictions, or be placed on MMI for both shoulders by March 8, 2025, or secure other employment in Sarasota County, resign or regrettably, be recommended for termination.

25. On May 6, 2025, Mr. Tuggle requested a reasonable accommodation, including remaining on light duty.

26. Defendant was reminded that no one has entered or even attempted to enter into a good faith discussion whatsoever with Mr. Tuggle about his injuries, temporary disability, recovery and reasonable accommodation, etc…

27. Additionally, SCFD was advised that should they need any additional medical documentation to evaluate his status, they should contact his attorney, and it would be provided.3

---

3 SCFD made no such request or inquiry as to his status, rather they just terminated him on June 20, 2025.

28. Historically, SCFD has accommodated other employees, even sometimes, for off-duty injuries by allowing them to remain on light duty until recovered and/or provide a temporary leave of absence until they are ready to return to work.

29. On or about April 24, 2025, Mr. Tuggle had shoulder surgery (arthroscopic rotator cuff repair) on his left shoulder, to be followed by prescribed physical therapy.

30. On June 20, 2025, SCFD wrongfully terminated Mr. Tuggle violating the ADA and FRCA.

31. The decision to terminate rather than accommodate Mr. Tuggle was motivated in part by their refusal to accommodate his disability under the ADA and FCRA.

32. At no point did any representative of SCFD engage in any good faith interactive process with Mr. Tuggle regarding his injuries, recovery, or reasonable accommodations as more particularly set forth below.

33. Mr. Tuggle requested SCFD to reconsider their position and rescind their wrongful termination and reinstate his employment; however, to

date, they have refused to do so.4

34.    Mr. Tuggle's goal was to provide SCFD with a full and fair opportunity to correct their wrongful termination prior to filing this lawsuit.

35.    Prior to Mr. Tuggle's termination, SCFD never entered into any good faith discussion or dialogue regarding medical documentation they needed or reasonable accommodations he needed.5

36.    As a direct result of his work-related right and left shoulder injuries, Plaintiff suffered significant physical impairments that substantially limited one or more major life activities, including, but not limited to, lifting, reaching, carrying, pushing, pulling, performing manual tasks, working, dressing, sleeping, and caring for himself. Plaintiff also experienced chronic pain, reduced range of motion, weakness, and limitations in the use of both upper extremities.

37.    Throughout the course of his treatment, Plaintiff underwent extensive

---

4 Mr. Tuggle has a pending grievance for violating his contractual rights under the Collective Bargaining Agreement which claim is subject to Arbitration with FCMS.
5 Additionally, Workers' Compensation updates employers on their employees' work status, such as work restrictions, light duty availability, and estimated recovery time.

diagnostic testing, conservative treatment, physical therapy, occupational therapy, work restrictions, and ultimately surgical repair of both shoulders, including arthroscopic rotator cuff repairs.

38. Plaintiff remained under continuous medical care for approximately two years, during which his treating orthopedic surgeon repeatedly imposed work restrictions, including non-weightbearing restrictions, light-duty restrictions, and lifting limitations of two pounds, five pounds, ten pounds, and later restrictions limiting lifting to twenty pounds from floor to shoulder level and ten pounds overhead.

39. Plaintiff's impairments substantially limited his ability to perform major life activities, including lifting objects, reaching overhead, carrying heavy equipment, performing manual tasks, dressing, bathing, sleeping without pain, performing household activities, and performing the physically demanding tasks.

40. Plaintiff's medical providers documented persistent pain, decreased strength, reduced range of motion, limitations with internal rotation, difficulty performing activities of daily living, and functional limitations that required prolonged physical and occupational therapy

following both shoulder surgeries.

41. At all material times, Defendant had actual knowledge of Plaintiff's medical condition, work restrictions, physical limitations, and continuing need for reasonable accommodation through Workers' Compensation records, treating physician reports, medical certifications, work status reports, and direct communications with Plaintiff.

42. Plaintiff was a qualified individual with a disability within the meaning of the ADA and the FCRA because, notwithstanding his physical impairments, he remained capable of performing the essential functions of his position with reasonable accommodation, including temporary light-duty assignments, modified lifting requirements, and temporary intermittent leave during his recovery.

43. Defendant regarded Plaintiff as having physical impairment and treated Plaintiff adversely because of his medical condition, work restrictions, and perceived inability to perform unrestricted duties.

44. Plaintiff's impairments were neither minor nor transitory and substantially limited his ability to perform activities requiring the use

of his upper extremities for an extended period.

45. Even after surgical intervention, Plaintiff remained subject to physician-imposed lifting restrictions, continued rehabilitation, and limitations affecting overhead reaching, internal rotation, and carrying weight.

46. Nevertheless, based upon the foregoing, Defendant failed to engage in the interactive process and instead terminated Plaintiff because of his disability and resulting restrictions.

47. As a result of Mr. Tuggle's wrongful termination, he was forced into early retirement, causing general and special damages, including, but not limited to, back pay and lost benefits such as health, dental, vision insurance, retirement/401k and/or pension, lost future wages due to early retirement, loss of entitled compensation from the Deferred Retirement Option Program, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and other non-pecuniary and/or intangible losses; attorney's fees costs.

48. At all times material herein, Defendant was engaged in an industry

affecting commerce and had more than 15 employees for each working day in each of 20 or more calendar weeks in 2022.

49. In particular, at all times material herein, Defendant had more than 500 + employees for each working day in each of 20 or more calendar weeks in 2025.

**<u>Defendant's Failure to Engage in the Interactive Process</u>**

50. Defendant failed to engage in the good faith interactive process contemplated by the ADA and required by the employer.

51. As a direct result of Defendant's failure to participate in that process, reasonable accommodations that would or could have enabled Plaintiff to perform the essential functions of his position were neither explored nor implemented, including but not limited to, light duty, part time light duty, job modifications, leave of absence, etc...

52. Defendant was aware Plaintiff wanted to return to work after his two shoulder surgeries and required physical therapy but refused to follow the interactive process.

53. However, Defendant's insisted upon a full-duty release as a condition of continued employment constituted a failure to engage in the

interactive process in good faith and resulted in the denial of reasonable accommodations that would or could have enabled Plaintiff to continue his employment.

54. Defendant's obligations under ADA were not extinguished or diminished by Plaintiff's decision to retain legal counsel.

55. Defendant failed to continue the interactive process in good faith, failed to evaluate available reasonable accommodations, and instead conditioned Plaintiff's continued employment upon obtaining an unrestricted release to full duty with no restrictions.

## **Conditions Precedent**

56. Plaintiff was wrongfully terminated by Defendant on June 20, 2025.

57. Plaintiff timely filed his Charge of Discrimination with the EEOC with dual filing with the Florida Commission on Human Relations on April 15, 2026.

58. Plaintiff timely filed his Charge of Discrimination with the EEOC and the FCHR within 300 days of his wrongful termination.

59. Plaintiff's Charge of Discrimination was timely filed.

60. The EEOC issued its right to sue letter on April 24, 2026.

61. This action was filed on July 22, 2026.

62. This action was filed within 90 days of the right to sue letter.

63. This action was timely filed.

64. All conditions precedent have occurred and/or have been waived.

## Attorney's Fees, Costs and Pre-judgment Interest

65. Plaintiff has employed the undersigned attorney and agreed to pay him a reasonable attorney's fee and the costs of the action

66. Plaintiff is entitled to have his attorney awarded a reasonable attorney's fee and the costs of the action if he prevails pursuant to 42 U.S.C. § 1981a and the Americans with Disabilities Act, 42 U.S.C. 42 U.S.C. 12101 *et seq* and 42 U.S.C. § 12205 and pursuant to § 760.01, *et seq*, § and 760.11, Florida Statues.

67. Plaintiff is entitled to pre-judgment interest and costs if he prevails.

## Count I
## (The ADA, Federal law, failure to accommodate)

68. The ADA, as amended, expressly provides that unlawful discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified

Page **13** of **18**

individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship' on the operation of the business of the business of such covered entity.   42 U.S.C. § 12112(b)(5)

69. Paragraphs 1-67 are realleged.

70. Plaintiff was a qualified individual under the ADA because he, with or without reasonable accommodation, could perform the essential functions of his employment position.

71. Plaintiff had a disability because at the time of his wrongful discharge, he had a physical impairment that substantially limited one or more of his major life activities.

72. Plaintiff asked for a reasonable accommodation, including remaining on light duty.

73. Defendant intentionally discriminated against Plaintiff because he had a disabling by not allowing him to remain on light duty and/or granting him a temporary leave of absence while he recovered from his two shoulder surgeries whereas other similarly situated employees were given accommodations, including, but not limited to, allowed to

work light duty and/or given temporary leave of absence until they recovered.

74. Defendant intentionally discriminated against Plaintiff by failing to accommodate him by not allowing him to remain on light duty and/or provide him with a leave of absence until he was able to recover without restrictions.

**WHEREFORE**, Plaintiff demands judgment for general and special damages, compensatory, back pay and lost benefits such as health, dental, vision insurance, retirement/401k and/or pension, lost future wages due to early retirement, loss of entitled compensation from Deferred Retirement Option Program, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; reinstatement; attorney's fees costs and pre-judgment interest; an injunction enjoining Defendant from engaging in discrimination; and, for such other affirmative action and equitable relief as appropriate.

## Count II
### (Chapter 760, Florida Statutes, State law, discrimination due to failure to accommodate)

75.  This is an action for wrongful discharge in violation of the § 760.10, Florida Statutes, the Florida Civil Rights Act of 1992 ("FCRA") because of discrimination in employment based upon Plaintiff's disability.

76.  Paragraphs 1-67 are realleged.

77.  Florida state law of discrimination follows the ADA.  *Smith v. Avatar Props.,* 714 So. 2d 1103 (1998), *McCaw Cellular Communs. v. Kwiatek*, 763 So. 2d 1063 (1999), *Quick v. Tripp, Scott, Conklin & Smith, P.A.*, 43 F. Supp. 2d 1357 (1999), *Carper v. TWC Servs.,* 820 F. Supp. 2d 1339 (2011), Florida Civil Rights Act of 1992 (Florida CRA) (2025).

78.  Plaintiff was a qualified individual under FCRA because he, with or without reasonable accommodation, could perform the essential functions of his employment position.

79.  Plaintiff had a disability because at the time of his wrongful discharge, he had a physical impairment that substantially limited one or more of

Page **16** of **18**

his major life activities.

80.    Plaintiff asked for a reasonable accommodation, including remaining on light duty.

81.    Defendant intentionally discriminated against Plaintiff because he had a disabling by not allowing him to remain on light duty and/or granting him a temporary leave of absence while he recovered from his two shoulder surgeries whereas other similarly situated employees were given accommodations, including, but not limited to, allowed to work light duty and/or given temporary leave of absence until they recovered.

82.    Defendant intentionally discriminated against Plaintiff by failing to accommodate him by not allowing him to remain on light duty and/or provide him with a leave of absence until he was able to recover without restrictions.

**WHEREFORE**, Plaintiff demands judgment for general and special damages, compensatory, back pay and lost benefits such as health, dental, vision insurance, retirement/401k and/or pension, lost future wages due to early retirement, loss of entitled compensation from Deferred Retirement

Option Program, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; reinstatement; attorney's fees costs and pre-judgment interest; an injunction enjoining Defendant from engaging in discrimination; and, for such other affirmative action and equitable relief as appropriate.

## Demand for Jury Trial

83.    Plaintiff demands a trial by jury on all issues so triable.

Dated: this 22nd day of July 2026.

/s/ E. Dusty Aker, Esq.
E. Dusty Aker, Esq.
Fla. Bar.#: 657166
Lead Counsel for Plaintiff
AKER Law Firm, P.A.
3400 S. Tamiami Tr. Ste. 101
Sarasota, Fl 34239
Phone: 941-462-2020
Facsimile: 941-462-2022
Email: dustyaker@akerlawfirm.com